**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PNC EQUIPMENT FINANCE, LLC, | : | |
|    *Plaintiff*, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 19-4708 |
| | : | |
| DOUG PAK, et al., | : | |
|    *Defendants*. | : | |

<u>**MEMORANDUM**</u>

**JONES, II  J.**                                                                                         **October 21, 2020**

**I.       INTRODUCTION**

The instant matter emerges out of a breach of contract claim under Pennsylvania law. Plaintiff PNC Equipment Finance, LLC ("Plaintiff") brings this action against Defendants Doug Pak, BLD Brands, LLC, and BLD Ventures, LLC (collectively, the "Defendants"), seeking to recover on three guaranties of a commercial loan. Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint (ECF No. 7) [hereinafter Motion to Dismiss] pursuant to Federal Rule of Civil Procedure 12(b)(2), or, in the alternative, Rule 12(b)(6). For the reasons set forth herein, Defendants' Motion to Dismiss is denied.[1]

**II.     FACTUAL BACKGROUND**[2]

The underlying dispute in this case arises from Defendants' contractual obligations to Plaintiff under a series of individual guarantees ("Guarantees") executed between the Parties. Plaintiff is a Delaware limited liability company with its principal place of business in Pennsylvania. Compl. ¶ 1. Defendants BLD Brands, LLC ("Defendant BLD Brands")[3] and BLD Ventures, LLC ("Defendant BLD Ventures") are both limited liability companies organized under

---

[1] The Court has fully reviewed the submissions made in support of and in opposition to Defendants' Motion to Dismiss and considers the Motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).

[2] In accordance with the standard of review for motions to dismiss under Rule 12(b)(2) and Rule 12(b)(6), the Court will present the facts as alleged in the Complaint and attachments thereto. *See infra* Parts IV.A–B.

[3] Defendant BLD Ventures is the sole member of Defendant BLD Brands. Compl. ¶ 3.

the laws of the State of California. Compl. ¶¶ 3-4. Defendant Doug Pak ("Defendant Pak") is a citizen of California and a member of Defendant BLD Ventures. Compl. ¶¶ 2, 4.

According to the Complaint, on or about September 11, 2017, Plaintiff entered into a Loan and Security Agreement ("Loan Agreement")[4] with six of Defendants' franchise entities ("Borrowers"),[5] whereby Plaintiff agreed to extend an aggregate principal amount of up to $42,300,000 in credit to Borrowers. *See* Compl. ¶¶ 8, 22, 24; Compl., Ex. B ("Loan Agreement"); Pl.'s Resp. Opp'n 3, ECF No. 11. Defendants concurrently executed a series of Guarantees in favor of Plaintiff and in connection with the underlying Loan Agreement.[6] Compl. ¶ 8. Defendant Pak executed each of these Guarantees separately: one in his individual capacity, and two in his capacity as principal and co-CEO of Defendants BLD Brands and BLD Ventures.[7]

Pursuant to the Guarantees, Defendants are jointly and severally liable for the entirety of Borrowers' payment obligations to Plaintiff under the Loan Agreement,[8] with the exception of Defendant Pak's individual liability being limited to $6,000,000.[9] *See* Compl. ¶¶ 25, 27; Compl., Ex. A ("Guaranty")).[10] These Guarantees contained the following forum selection clause:

> "Guarantor agrees that any action or proceeding against Guarantor
> to enforce, or arising out of, this Guaranty may be commenced in

---

[4] The Court may consider the Loan Agreement attached to the Complaint since the document is central to the claims at issue and Defendants do not dispute its authenticity. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (emphasizing that a court may consider "undisputedly authentic documents if the complainant's claims are based upon these documents" when deciding a Rule 12(b)(6) motion).

[5] The Borrowers are: Serazen, LLC; PJ Las Vegas, LLC; PJ Ohio, LLC; PJ North Carolina, LLC; South Star NC, LLC; and South Star SC, LLC. Compl. ¶ 18. Borrowers are based in Delaware, Nevada, North Carolina, and South Carolina. Compl. ¶¶ 13-18.

[6] Plaintiff required a personal guaranty of up to $6,000,000 from Defendant Pak and unlimited corporate guaranties from Defendants BLD Brands and BLD Ventures to guarantee Borrowers' obligations under the Loan Agreement (collectively, the "Guarantees"). *See* Compl. ¶¶ 26-27; Pl.'s Resp. Opp'n 3.

[7] *See* Compl. ¶¶ 9-11. Defendant Pak and the businesses he controls, including Defendants BLD Brands and BLD Ventures (as well as Borrowers), are sophisticated business parties who entered into a commercial loan transaction with Plaintiff, under which Plaintiff extended over $30 million in credit to Borrowers to operate their businesses.

[8] To ensure against the risk that Borrowers might default, Plaintiff received a Guaranty from each Defendant, which guaranteed payment of the obligations owed by Borrowers to Plaintiff in the event of any default by Borrowers.

[9] Pursuant to each Guaranty, "Defendants unconditionally guaranteed the Borrowers' obligations under the Loan Agreement and became obligated to repay such obligations to [Plaintiff] without further notice." Pl.'s Resp. Opp'n 3.

[10] A copy of each Guaranty is attached to the Complaint as Exhibit A.

> state or federal court in any county in the Commonwealth of Pennsylvania in which Lender has an office, or in any other location where Guarantor or any of his/its property is located, and Guarantor waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and shall confer personal jurisdiction if served by registered or certified mail in accordance with Section 7 hereof."

See Guaranty § 10(H).

According to the Complaint, Borrowers are in default under the Loan Agreement, and, because of that default, Defendants are obligated to repay all of Borrowers' debt obligations. Compl. ¶¶ 23-24, 31. In accordance with each Guaranty, Plaintiff sent letters to Defendants on or about August 2, 2019, demanding payment.[11] Compl. ¶ 32; Compl., Ex. C (Plaintiff's Letters to Defendants dated August 2, 2019). However, Plaintiff alleges that Defendants have yet to reimburse Plaintiff for the amount due under the Loan Agreement. Compl. ¶ 33.

## III. PROCEDURAL HISTORY

Based on the above facts, Plaintiff initiated this lawsuit against Defendants on October 10, 2019, invoking the Court's diversity jurisdiction, asserting a single count for breach of contract, and alleging that the amount due in principal and interest exceeds $30,000,000. (*See generally* Complaint, ECF No. 1). On November 24, 2019, Defendants filed the instant Motion to Dismiss (ECF No. 7). Therein, Defendants seek to dismiss Plaintiff's Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or, in the alternative, for failure to state a claim under Rule 12(b)(6). On November 27, 2019, Plaintiff submitted a response in opposition to Defendants' Motion to Dismiss. (*See* Plaintiff's Opposition to Defendants' Motion to Dismiss, ECF No. 11). Defendants filed a Reply Brief in Support of their Motion to Dismiss on

---

[11] Defendants do not dispute that Borrowers are in default under the Loan Agreement. Pl.'s Resp. Opp'n 4.

December 10, 2019. (*See* Defendants' Reply Brief in Support of their Motion to Dismiss ("Defs.' Reply Br."), ECF No. 14).[12] The matter is now ripe for judicial disposition.

The Court finds that the forum selection clause found in Section 10(H) of each Guaranty is valid and enforceable against Defendants. As such, Defendants' Motion to Dismiss for lack of personal jurisdiction is denied. The Court also finds that Plaintiff has sufficiently stated a claim against Defendant Pak. Accordingly, Defendants' alternate Motion to Dismiss for failure to state a claim is also denied.

## IV.   STANDARDS OF REVIEW

### A.   Federal Rule of Civil Procedure 12(b)(2)

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim for lack of personal jurisdiction. Once a defendant has raised this jurisdictional defense, the burden shifts to the plaintiff to present a *prima facie* case establishing appropriate jurisdiction over the non-resident defendants in the forum. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *see also Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) ("[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction."). A plaintiff has the burden of showing "with reasonable particularity" that enough contact exists between the defendant and the forum to support the exercise of personal jurisdiction by the forum state. *Mellon Bank v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992); *see also Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 418 (E.D. Pa. 2005) ("In order to establish a *prima facie* case, the plaintiff must present specific facts that would allow the court to exercise jurisdiction over the defendant.").

---

[12] In connection with the instant Motion, the Court has reviewed the declarations of Doug Pak ("Pak Decl.") and George G. Cole Jr. ("Cole Decl."), which were filed along with Defendants' Motion to Dismiss and Plaintiff's Response in Opposition thereto. *See* Pak Decl. ¶¶ 1-11, ECF No. 7-2; Cole Decl. ¶¶ 1-6, ECF No. 11-1.

In determining the existence of personal jurisdiction, courts "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker*, 292 F.3d at 368. Once the plaintiff's "allegations are contradicted by an opposing affidavit . . . [they] must present similar evidence in support of personal jurisdiction." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009). To counter opposing affidavits, "[p]laintiffs may not repose upon their pleadings in this manner. Rather, they must counter defendants' affidavits with contrary *evidence* in support of purposeful availment jurisdiction." *Id.* at 559.  To that end, "[t]he plaintiff must respond to the defendant's motion with "actual proofs"; "affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry." *Lionti v. Dipna, Inc.*, No. 17-1678, 2017 WL 2779576, at *1 (E.D. Pa. June 27, 2017) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)); *see also Lehigh Gas Wholesale, LLC v. LAP Petro., LLC*, No. 14-5536, 2015 WL 1312213, at *2 (E.D. Pa. Mar. 23, 2015) ("Plaintiff carries the burden to prove personal jurisdiction using 'affidavits or other competent evidence.'") (quoting *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)); *In re Chocolate Confectionary*, 602 F. Supp. 2d at 556-57 (a plaintiff must present contrary evidence in the form of "actual proofs[.]").

Personal jurisdiction is shown through either specific or general jurisdiction. *Sugartown Worldwide LLC v. Shanks*, No. 14-5063, 2015 WL 1312572, at *3 (E.D. Pa. Mar. 24, 2015). To establish personal jurisdiction over a defendant, a court must first apply the relevant state long-arm statute to determine if it may exercise personal jurisdiction; then, the court must determine if that jurisdiction violates the Due Process Clause of the Constitution. *IMO Indus. V. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998). Pennsylvania's long-arm statute provides that a court may exercise personal jurisdiction over a non-resident "to the fullest extent allowed under the

Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b) (2017). The Due Process Clause of the Fourteenth Amendment requires a court to ask, "whether 'the quality and nature of the *defendant's* activity is such that it is reasonable and fair to require [that it] conduct [its] defense in that state.'" *Time Share*, 735 F.2d at 63 (citations omitted) (emphasis in original).

General personal jurisdiction exists when a foreign party maintains "continuous and systematic" contacts with a state and may be sued in that state on any claim, whereas specific personal jurisdiction over a defendant exists when a plaintiff's suit is related to or arises out of a defendant's contacts with the state. *Reassure Am. Life Ins. Co. v. Midwest Res., Ltd.*, 721 F. Supp. 2d 346, 353 (E.D. Pa. 2010) (internal citations omitted). To establish specific personal jurisdiction, a plaintiff must show the defendant has "*minimum contacts* with the forum." *IMO*, 155 F.3d at 259 (internal citations omitted) (emphasis in original). To fulfill this standard, "the defendant must have purposefully directed [its] activities at the forum." *Reassure*, 721 F. Supp. 2d at 353 (internal citations omitted). This standard provides that a defendant will not be subject to a suit resulting from "'random,' 'fortuitous,' or 'attenuated' contacts . . . or . . . the 'unilateral activity of another party'." *Id.* (citations omitted). However, personal jurisdiction cannot be avoided simply because "the defendant did not physically enter the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

Once a court finds that a defendant had established minimum contacts with a forum, it must determine "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 320 (1954)). To contradict this finding, a defendant must demonstrate that exercising jurisdiction

would be "unreasonable" when weighing certain factors.[13] *Reassure*, 721 F. Supp. 2d at 356 (quoting *Burger King*, 471 U.S. at 476-79).

      **B.    Federal Rule of Civil Procedure 12(b)(6)**

When reviewing a Rule 12(b)(6) motion to dismiss, district courts must first separate legal conclusions from factual allegations. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Legal conclusions should be discarded, and well-pleaded facts given the deference of truth. *Id.* at 210-11. Courts must then determine whether the well-pleaded facts state a "plausible claim for relief." *Id.* at 211. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citing *Phillips*, 515 F.3d at 231). When adjudicating a motion to dismiss under Rule 12(b)(6), courts may consider the allegations contained in the complaint, as well as "matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint []." *Rogan v. Cnty, of Lawrence, Pa.*, No. 12-1375, 2013 WL 3369146, at *4 (W.D. Pa. July 2, 2013) (citations omitted). *See, e.g.*, *Tate v. Philly Shipyard, Inc.*, No. 19-5076, 2020 WL 2306326, at *1 (E.D. Pa. Apr. 16, 2020).

---

[13] In *Burger King Corp. v. Rudzewicz*, the Supreme Court held that "determining whether a contract with a forum resident establishes minimum contacts with that forum requires a " 'highly realistic' approach" that considers factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *See Reassure Am. Life Ins. Co. v. Midwest Res., Ltd.*, 721 F. Supp. 2d 346, 354 (E.D. Pa. 2010) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)).

V.      **DISCUSSION**

      A.      **Defendants' Motion to Dismiss for Lack of Personal Jurisdiction**

Defendants have moved to dismiss the instant action on the grounds that the Court lacks personal jurisdiction over them. In support of their Motion, Defendants allege that Section 10(H) of the Guarantees—a forum selection clause—fails to establish Defendants' consent to the jurisdiction of any Pennsylvania court and to the jurisdiction of the Eastern District of Pennsylvania, in particular. The Court finds that Defendants consented to the jurisdiction of the courts of Pennsylvania and the jurisdiction of this Court, specifically, via Section 10(H) of the Guarantees. Therefore, Defendants' Motion to Dismiss for lack of personal jurisdiction is denied.

          1.      <u>Defendants' Consent to the Jurisdiction of Pennsylvania Courts</u>

By the inclusion of Section 10(H) in the Guarantees, Defendants consented to the jurisdiction of Pennsylvania courts as a matter of law. It is well established that personal jurisdiction is a right that may be waived through contract. *Radian Guar., Inc. v. Bolen*, 18 F. Supp. 3d 635, 643 (E.D. Pa. 2014) (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982)). "[A] forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes that: (1) it is the result of fraud or overreaching, (2) enforcement would violate a strong public policy of the forum, or (3) enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *First Fin. Mgmt. Grp., Inc. v. Univ. Painters of Baltimore, Inc.*, No. 11-5821, 2012 WL 1150131, at *2 (E.D. Pa. Apr. 5, 2012) (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983), overruled on other grounds by *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495 (1989)).

The Supreme Court itself embraced the validity of forum selection clauses in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). In that case, the Supreme Court analyzed the validity

of a forum selection clause in an international towage contract between the parties. In its decision, the Court enforced the forum selection clause, writing that the lower court should have "[enforced] the forum clause specifically unless [defendant] Zapata could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overarching." *M/S Bremen*, 407 U.S. at 15. The Supreme Court justified its rationale thus: "The choice of that forum was made in an arm's-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts." *Id.* at 12.

  Here, Defendants do not attempt to argue that the Section 10(H) forum selection clause was the result of fraud or overreaching, and there is no evidence offered to indicate that this was the case. Rather, Defendants primarily argue that the clause is insufficient to confer jurisdiction on its face for two reasons. First, Defendants contend that specific language (namely, the words "consents to" or "submits to") is necessary to indicate affirmative consent to personal jurisdiction. In support, Defendants cite to four cases that include such terminology: *Radian Guaranty Inc. v. Bolen*, 18 F. Supp. 3d 635 (E.D. Pa. 2014); *Skold v. Galderma Labs, L.P.*, 99 F. Supp. 3d 585, 605 (E.D. Pa. 2015); *Synthes, Inc. v. Emerge Med., Inc.*, 887 F. Supp. 2d 598 (E.D. Pa. 2012); and *First Fin. Mgmt. Grp., Inc.*, 2012 WL 1150131, at *1. However, none of these opinions state that such affirmative language is necessary to indicate consent to jurisdiction. In fact, they do not discuss the language of the forum selection clauses presently at issue at all. Rather, these opinions concern the enforceability of the forum selection clauses on other grounds. For instance, *Radian* (in part), *Skold*, and *Synthes* generally discuss whether the forum selection clauses at issue are enforceable against non-signatory third parties. *First Financial Mgmt. Grp.*, similarly, is about whether the forum selection clause is enforceable given that the relevant agreement had been terminated. These

cases, accordingly, offer no support to Defendants' contention that the language of Section 10(H) is insufficient to confer personal jurisdiction.

Furthermore, the Supreme Court's landmark decision on forum selection clauses notably concerned a clause that did not include "consents to" or "submits to" language. In *M/S Bremen*, the forum selection clause at issue simply stated, "Any dispute arising must be treated before the London Court of Justice." *M/S Bremen*, 407 U.S. at 2. This clause contained far less affirmative language than Section 10(H), which is at issue here. Nonetheless, the clause was deemed sufficient to establish personal jurisdiction over Defendants.

To that end, Defendants point to *American Equipment Leasing Co. v. Russell* as an example illustrating a valid and enforceable forum selection clause. The clause at issue in that case read as follows: "Lessee *agrees* that any actions or proceedings to which Lessor is a party arising directly or indirectly from this Lease shall be litigated in any state or federal court having situs within the Commonwealth of Pennsylvania, and *that said court shall have jurisdiction thereof*." *Am. Equip. Leasing Co. v. Russell*, No. 89-3336, 1989 WL 83611, at *1 (E.D. Pa. Jul. 25, 1989) (emphasis added). However, Defendants fail to recognize that the language of Section 10(H) is essentially identical to that of the clause in *American Equipment Leasing Co.*, at least insofar as it communicates a consent to personal jurisdiction. To reiterate, Section 10(H) reads as follows:

> "Guarantor *agrees* that any action or proceeding against Guarantor to enforce, or arising out of, this Guaranty may be commenced in state or federal court in any county in the Commonwealth of Pennsylvania in which Lender has an office, or in any other location where Guarantor or any of his/its property is located, and Guarantor waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and *shall confer personal jurisdiction* if served by registered or certified mail in accordance with Section 7 hereof."

*See* Guaranty § 10(H) (emphasis added). Therefore, Defendants' reference to this case only reiterates that a forum selection clause need not expressly include the language "consents to" or "submits to" to indicate affirmative consent to personal jurisdiction.

Finally, the Court briefly notes that a number of cases from this Court support the position that the affirmative language referenced by Defendants is unnecessary to establish consent to personal jurisdiction. For instance, in *PNC Bank, Nat. Ass'n v. Kanaan*, the Court found that it had personal jurisdiction over the defendant pursuant to a forum selection clause that read, in relevant part, "Guarantor . . . agrees to be bound by any judgment rendered thereby in connection with this Guaranty . . . [and] waives any objection to jurisdiction and venue of any action instituted hereunder." *PNC Bank, Nat. Ass'n v. Kaanan*, No. 11-7770, 2012 WL 13835534, at *7 (E.D. Pa. May 21, 2012). Similarly, the Court exercised personal jurisdiction in *Korn Technologies, Inc. v. SKC Forspray, Ltd.* pursuant to a forum selection clause which included the following, "[ . . . ] SKC agrees that all actions or proceedings arising out of or in connection with this agreement shall be tried and litigated only in the state and federal courts located in the Eastern District of the Commonwealth of Pennsylvania, or, at the sole option of Korn Corp., in any other court in which Korn Corp. shall initiate legal or equitable proceedings and which has jurisdiction[.]" *Korn Techs., Inc. v. SKC Forspray, Ltd.*, No. 90-4721, 1990 WL 149216, at *2 (E.D. Pa. Oct. 2, 1990).

Next, Defendants contend that Section 10(H) is unenforceable against them because it does not specify which jurisdiction the Parties allegedly consented to, rendering it impossible to determine how many jurisdictions are potentially implicated by the clause. In support of this proposition, Defendants cite to *Harfouche v. Wehbe*, a case from the District of New Jersey in which the court invalidated a forum selection clause that read, "Any conflict that may result about interpreting or executing all or some of the items of this contract pertains to specialized courts in

Lebanon and the United States of America." *Harfouche v. Wehbe*, 950 F. Supp. 2d 766, 768 (D.N.J. 2013). In that case, the court noted that, "[b]ecause the clause encompasses so many jurisdictions, it can hardly be construed as selecting a forum at all." *Id.* at 771. Defendants thus rely on *Harfouche* for the proposition that "where a contractual provision does not specify the jurisdiction to which the parties purportedly submit, it is unenforceable." Mot. Dismiss 4.

However, there are important differences between *Harfouche* and the instant case that render Defendants' rationale unpersuasive. For one, the forum selection clause at issue in *Harfouche* encompassed the entirety of the United States, as well as Lebanon. This is far broader than Section 10(H), which encompasses only state or federal courts within Pennsylvania where Plaintiff has an office or where Defendants have assets. Limited forum selection clauses—such as this one—have routinely been enforced by this Court. For instance, *PNC Bank*, *Skold*, and *Synthes* all concerned forum selection clauses encompassing the entirety of this Commonwealth. Furthermore, the court in *Harfouche* expressly noted that a forum selection clause could appropriately be limited to an entire state by writing, "In a typical forum selection clause, the parties agree to jurisdiction in a specific court or *state*." *Harfouche*, 950 F. Supp. 2d at 771 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587-88 (1991)) (emphasis added). Finally, it should be noted that the court in *Harfouche* emphasized the ambiguity of the forum selection clause, in particular, because it had been translated from Arabic to English three years after its drafting and failed to define the term "specialized courts." *Harfouche*, 950 F. Supp. 2d at 771. In sum, *Harfouche* falls short of establishing the general principle Defendants cite it for—namely, that a forum selection clause needs to reference a specific jurisdiction to be enforceable.

For the reasons described above, the Court determines that Defendants consented to personal jurisdiction in Pennsylvania courts via Section 10(H) of the Guarantees.

2. Application of *Contra Proferentem* to Interpretation of Section 10(H) of the Guarantees

Neither party has argued that Section 10(H) is unambiguous. Nonetheless, Defendant contends that should the Court deem Section 10(H) ambiguous, the Court should apply the doctrine of *contra proferentem* and construe any ambiguities within the clause in their favor. While the Court agrees with the Parties that Section 10(H) is unambiguous, the Court will briefly discuss the doctrine of *contra proferentem* and its applicability to the instant situation.

*Contra proferentem* is a canon of contract interpretation by which ambiguities in contracts are construed against the drafter. *See, e.g.*, *Paddick v. Butt*, No. 09-4285, 2018 WL 1991737, at *7 (E.D. Pa. Apr. 27, 2018) ("Under the rule of *contra proferentem*, for any *ambiguous* language in a contract is construed against the drafter and in favor of the other party if the latter's interpretation is reasonable.") (citation omitted). While *contra proferentem* is strictly applied in the interpretation of insurance contracts, it is not automatically or universally applied to other contracts. *Heasley v. Belden & Blake Corp*, 2 F.3d 1249, 1257 (3d Cir. 1993) (citing *Eley v. Boeing Co.*, 945 F.2d 276, 279-80 (9th Cir. 1991)). Additionally, notwithstanding the type of contract at issue, *contra proferentem* has less force where the agreement was freely negotiated or where both parties are similarly sophisticated. *See, e.g.*, *New Jersey v. Merrill Lynch & Co.*, 640 F.3d 545 (3d Cir. 2011); *Prudential Ins. Co. of Am. v. Prusky*, 473 F. Supp. 2d 629 (E.D. Pa. 2007).

In *Heasley*, the Court explained the rationale of *contra proferentem* in the context of insurance contracts thus: "[I]nsurance policies are almost always drafted by specialists employed by the insurer. In light of the drafters' expertise and experience, the insurer should be expected to set forth any limitations on its liability clearly enough for a common layperson to understand; if it fails to do this, it should not be allowed to take advantage of the very ambiguities that it could have prevented with greater diligence." *Heasley*, 2 F.3d at 1257 (citing *Kunin v. Benefit Trust Life Ins.*

*Co.*, 910 F.2d 534, 540 (9th Cir. 1990)). Following this rationale, the Court finds that, even if Section 10(H) were ambiguous, the doctrine of *contra proferentem* would not apply to the analysis of the clause. Both Parties to the Guarantees are sophisticated business entities. As Plaintiff notes—and Defendants do not contradict— "Doug Pak and his affiliated companies are among the largest operators of restaurant franchises in the United States." *See* Pl.'s Resp. Opp'n 9, ECF No. 11. The relative sophistication of the parties would dictate against the application of *contra proferentem* to the interpretation of this agreement, even accepting as true Defendants' contention that the Parties did not negotiate Section 10(H). *See* Mot. Dismiss 7.

      3. <u>Defendants' Consent to the Jurisdiction of the Eastern District of Pennsylvania</u>

By executing the Guarantees at issue, Defendants not only consented to the jurisdiction of Pennsylvania courts, they also consented to personal jurisdiction in the Eastern District of Pennsylvania. Where unambiguous, contracts should be interpreted according to their plain meaning. *Bohler-Uddeholm America, Inc. v. Ellwood Grp. Inc.*, 247 F.3d 79, 92-93 (3d Cir. 2001).

Defendants argue that the plain language of Section 10(H) demands that this suit be commenced within the geographical bounds of Montgomery County, where Plaintiff's Horsham office is located. Therefore, Defendants reason, as no federal court in the Eastern District of Pennsylvania is located within the geographical bounds of Montgomery County, the Court cannot exercise personal jurisdiction over this action pursuant to the Parties' forum selection clause. This argument is unpersuasive for two reasons. For one, the Eastern District of Pennsylvania encompasses Montgomery County. Therefore, any federal suit commenced in Montgomery County would necessarily fall to this Court. Defendant's literal interpretation of the geographic requirements of the forum selection clause is unduly restrictive. *See, e.g., Skold*, 99 F. Supp. 3d at 606 ("[U]sing '[a] literal approach to interpreting forum selection clauses' could undermine their

purpose[.]") (citing *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013)).

Additionally, Defendants point to the forum selection provision in the underlying Loan Agreement between Plaintiff and Borrowers, which states that "Each Borrower hereby consents to the nonexclusive jurisdiction of the Court of Common Pleas of Montgomery County, Commonwealth of Pennsylvania or the United States District Court for the Eastern District of Pennsylvania[.]" Defs.' Reply Br. 6; Cole Decl. ¶ 4. Following the logic utilized in *Heasley*, Defendants contend that this provision is proof that Plaintiff could have expressly provided for personal jurisdiction in this Court and chose not to. However, the Court in *Heasley* relied on inconsistencies within a single medical plan in order to determine the meaning of a particular term. *Heasley*, 2 F.3d at 1255. This decision does not stand for the proposition that inconsistencies between two independent agreements should be used to ascertain the meaning of a provision, especially where the provision at issue is unambiguous.

Finally, even were we to rely on Defendants' narrow interpretation of Section 10(H), we find that this Court would properly be able to exercise personal jurisdiction over them. In addition to its Horsham office, Plaintiff also maintains an office within Philadelphia at 1600 Market Street, which is located in the same county as the federal court for this district. *See* Cole Decl. ¶ 1. Therefore, by the terms of Section 10(H), Plaintiff commenced this suit "in state or federal court in any county in the Commonwealth of Pennsylvania in which Lender has an office." *See* Guaranty § 10(H). Therefore, Defendants have consented to personal jurisdiction in the Eastern District of Pennsylvania.

4. <u>Defendants' Minimum Contacts with Pennsylvania</u>

In its response to Defendants' Motion, Plaintiff contends that, even if the forum selection clause in Section 10(H) of the Guarantees were unenforceable against Defendants, the Court could

nonetheless exercise personal jurisdiction over Defendants by virtue of their minimum contacts with this Commonwealth. However, the Court need not reach this portion of Plaintiff's argument. "Although in the usual case the plaintiff must show that the defendant has sufficient minimum contacts with the forum state such that the assertion of personal jurisdiction over him comports with the notions of fair play and substantial justice, in actions involving forum selection clauses analysis of the contacts with the forum state is inappropriate. Instead, the court must consider the validity and effect of the forum selection clause in order to determine if there has been a consent to *in personam* jurisdiction." *Healthcare Servs. Grp., Inc. v. Skyline Servs. Grp.*, No. 17-2703, 2018 WL 637773, at *3 (E.D. Pa. Jan. 30, 2018) (citing *PNC Bank, Nat. Ass'n*, 2012 WL 13835534, at *7). Because the Court has already determined that Section 10(H) is valid and enforceable against Defendants, a consideration of Defendants' minimum contacts with Pennsylvania is unnecessary.

**B. Defendants' Motion to Dismiss for Failure to State a Claim**

Defendants have alternately moved to dismiss this action on the grounds that Plaintiff has failed to state a claim against Defendant Pak. This assertion is grounded in the fact that Plaintiff seeks at least $30,000,000 in recovery, despite the fact that Defendant Pak's Guaranty expressly limits his personal liability to $6,000,000. *See* Mot. Dismiss 8-9. However, Plaintiff has not attempted to recover more than $6,000,000 from Defendant Pak. In fact, Plaintiff expressly noted in its Complaint that Defendant Pak's personal liability cannot exceed $6,000,000, writing that "[e]ach Guarantor is jointly and severally liable to PNC for the full amount due to PNC by Borrowers, *except that Defendant Pak's repayment obligation is capped at $6,000,000*." Compl. ¶ 27. Therefore, as Plaintiff has not asserted a claim against Defendant Pak in his individual capacity for more than $6,000,000, Defendants' Motion to Dismiss is denied.

## VI. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is denied. An Order consistent with this Memorandum Opinion follows separately.

BY THE COURT:

*/s/ C. Darnell Jones, II*
C. DARNELL JONES, II    J.